No. 22,963.

VICTOR CROSS, a Minor, by S. K. STOUTENBERG, His Next Friend, *Appellant*, v. MRS. S. C. ROSENCRANZ et al., *Appellees*.

### SYLLABUS BY THE COURT.

AUTOMOBILE—*Collision with Motorcycle—Exceeding Speed Limit—Negligence.* The rule that violation of a speed regulation does not constitute actionable negligence, or constitute contributory negligence defeating recovery, unless it contribute to injury, applied to admissions and findings of facts in an action for damages for personal injuries sustained in a collision between a motorcycle and an automobile.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed February 12, 1921. Reversed.

*L. A. Hasty, George Siefkin,* and *Robert R. Hasty,* all of Wichita, for the appellant.

*J. N. Haymaker,* of Wichita, for the appellees.

The opinion of the court was delivered by

BURCH, J.: The action was one for damages for personal injuries, sustained in a collision between plaintiff's motorcycle and defendants' automobile. A verdict was returned in favor of the plaintiff. Judgment was rendered against him, however, on his own testimony and on special findings returned by the jury, and he appeals.

The plaintiff testified he was riding a Harley-Davidson motorcycle, and was going north on the east side of Lawrence avenue, in the city of Wichita. Lawrence avenue is crossed from east to west by Fourteenth street. As he approached Fourteenth street, he saw the automobile coming south on the west side of Lawrence avenue. While he saw the automobile coming he did not give it special attention, and did not see a signal given by the automobile driver that she intended to turn east into Fourteenth street. The automobile did not remain on the west side of Lawrence avenue until the center of the intersection of the two streets was reached, as a

traffic regulation required. Indeed, the automobile did not reach Fourteenth street at all, but turned toward the southeast, and struck the motorcycle at a point about a foot and a half from the east curb of Lawrence avenue, and eight or ten feet north of the curb on the north side of Fourteenth street. When the plaintiff passed Fourteenth street he was within four or five feet of the curb on the east side of Lawrence avenue. When the automobile headed toward him, he turned in a northeasterly direction toward the curb, threw the motorcycle out of gear, and applied the brake, which was in good condition. The bumper of the automobile struck the plaintiff's left leg, broke it between the ankle and knee so that both bones protruded through flesh and clothing, and threw the plaintiff toward the east and upon the parking. The plaintiff testified he was not exceeding the speed limit, and testified further as follows:

"Q. At what speed do you estimate you were traveling? A. Just before I got to Fourteenth street I would say I was making from about twelve to fifteen miles an hour.

"Q. At the time of the collision at what speed do you estimate you were going? A. I was going very slow at that time, as much as I could slow it down after I put it out of gear and put on the brake—probably eight or ten miles an hour.

.    .    .    .    .    .    .    .    .    .    .    .    .

"Q. So you couldn't tell, then, except just making an estimate, how fast you were going at the time of this accident? A. Just by an estimate is all the way I could tell.

"Q. Just an estimate? A. Yes, sir.

"Q. And you estimate you were going twelve or fifteen miles an hour when you collided? A. I was, just before that. I was going slower at the time of the collision.

"Q. Just before that, you were crossing Fourteenth street, weren't you? A. Yes, sir.

"Q. You were going how fast when you crossed Fourteenth street? A. I would say about twelve or fifteen miles an hour.

"Q. When you crossed Fourteenth street? A. Yes, sir.

"Q. Then you slowed up a little between this Fourteenth street and and this ten feet north? A. I slowed up as much as I could.

"Q. If you slowed up as much as you could, how much do you think you slowed up in that ten feet? A. Well, I couldn't exactly say.

"Q. Well, you did say, in answer to Mr. Hasty's question, you said about how fast you were going at the time of the collision, didn't you? A. I estimated it was about eight or ten miles an hour.

"Q. You might have been going faster? A. I might have."

The findings of fact follow:

"SPECIAL FINDINGS.

"1. Who was driving the automobile at the time of the accident in question? Mrs. Rosencranz.

"2. If you find that defendant Mrs. S. C. Rosencranz was driving the automobile at the time in question, state at what rate of speed, if any, you find the automobile was moving at the time of the accident. Eight miles per hour.

"3. Did not defendant Mrs. S. C. Rosencranz give timely warning, by extending her hand out on the left side of her car, that she was intending to turn east on Fourteenth street? Yes.

"4. Is it not true that the automobile had practically stopped at the time of the accident in question? No.

"5. If you answer the above question negatively, then state at what rate of speed you find the automobile was going at the time of the accident. Eight miles per hour.

"6. State at what rate of speed you find plaintiff was going: (*a*) when crossing Fourteenth street; (*b*) when the collision occurred. (*a*) Ten miles per hour. (*b*) Eight miles per hour.

"7. Was there anything to prevent plaintiff from seeing the automobile when it turned east on Fourteenth street? The automobile turned east before reaching Fourteenth street.

"8. If you answer the above question affirmatively, then state what there was.

"9. What amount of clear space was there between the automobile at the place of the collision and the south curb of Fourteenth street? Thirty-five feet.

"10. If plaintiff had had his motorcycle under control when he started to cross Fourteenth street, could he have stopped it, and thus have prevented the collision? No.

"11. If the plaintiff, when crossing Fourteenth street, had been going at a legal rate of six miles per hour, could he not, in the exercise of ordinary care, have turned east on Fourteenth street, and thus have avoided the collision? No.

"12. State at what rate of speed you find plaintiff was going on his motorcycle when crossing Fourteenth street. Ten miles per hour.

"13. Did the said defendants, J. H. Skidmore and William Dunham, or either of them, exercise any control over the operation of the car at the time of the accident in question? No.

"14. Withdrawn.

"15. State what you find to be the width of Fourteenth street east of Lawrence avenue at the place where the injury occurred, including sidewalks and parking. 58 $\frac{18}{40}$ feet.

"16. Did not plaintiff's motorcycle strike the automobile with such force as to sever the two iron or steel rods which held the bumper in front of plaintiff's automobile? No.

"17. If you find the defendant was negligent at the time of the accident, and that her negligence caused the injury, then state in what her negligence consisted. Lack of proper control of automobile, and

starting to turn east on Lawrence avenue before reaching intersection of East Fourteenth street.

"18. State at what distance you find that a motorcycle can be stopped when going at a rate of six miles per hour.   Thirty feet..

"19. If the plaintiff had been going at the rate of speed prescribed by law when crossing Fourteenth street, to wit, six miles per hour, could he not, in the exercise of ordinary care, have stopped his motorcycle, and thus have avoided collision with the automobile?   No.

"20. State how far away defendant's automobile was when first seen by the plaintiff.   One hundred feet.

"21. Withdrawn.

"22. Withdrawn.

"23. Withdrawn.

"24. State at what point with reference to the manhole at the intersection of Fourteenth street and Lawrence avenue, the collision occurred. One foot north of manhole on Lawrence avenue.

The journal entry of judgment reads as follows:

"The court, . . . being duly advised in the premises, set aside the answer to question No. 18 of the special findings of fact of the jury as being contrary to the evidence of the case, and after setting aside answer to said question No. 18, as aforesaid, the court further finds according to the special findings of the jury and the uncontradicted testimony of the plaintiff himself, that this plaintiff was guilty of contributory negligence extending up to the time of the injury complained of in plaintiff's petition, and that because thereof, the defendants' motion for judgment on the special findings of the jury, notwithstanding their general verdict, should be sustained."

It will be observed that the court considered the soundness of the findings of fact, set aside one of them because it was contrary to the evidence, and rendered judgment on the others. The defendants have not appealed, and the findings of fact present established facts of the case.   This being true, the judgment is erroneous.

The plaintiff's testimony is in harmony with the findings of fact, unless it be in one particular.   On direct examination he said he was going at the rate of twelve or fifteen miles per hour just before he reached Fourteenth street.   On cross-examination he said he crossed Fourteenth street at that rate of speed.   The jury found he was going at the rate of ten miles per hour when crossing Fourteenth street.   The plaintiff was positive he was not exceeding the speed limit at the time of the collision.   Rates of speed were necessarily matters of estimate and opinion, and the court allowed the finding to stand.

Therefore, the discrepancy, if any, is not material, the important matter being that either rate of speed when crossing Fourteenth street was excessive and unlawful.

There is neither evidence nor finding showing the plaintiff was guilty of contributory negligence, unless it be in respect to the rate of speed at which he was traveling. He was on the proper side of the street. It is true, as he said, that he was not required to give a signal that he intended to keep his ·course. The fact that he did not see the signal indicating the driver of the automobile desired to turn into Fourteenth street, was unimportant. Had he seen the signal, he would have understood it meant a lawful turning into Fourteenth street, and not a flagrant cutting of the corner. When the automobile headed toward the plaintiff, he did everything possible to avert accident, and was unable to do so.

That the rate of speed at which the plaintiff was traveling contributed to the accident, was expressly negatived by findings 10, 11, and 19. If he had been crossing Fourteenth street at the statutory rate of speed, with his motorcycle under control, stopping would not have averted the collision, turning into Fourteenth street would not have saved him, and there is no suggestion that any other way to escape being run down was open. It is true the plaintiff violated the law by crossing Fourteenth street at an excessive rate of speed which brought him practically to the place of collision. The defendants assert that the·accident occurred in Fourteenth street, and for the purpose of a decision, the fact may be admitted. Nevertheless, it is quite elementary that violation of a speed regulation does not constitute actionable negligence, or constitute contributory negligence, defeating recovery, unless it contribute to injury, and the ·findings are conclusive that this accident would have occurred if the plaintiff had been observing the law.

The defendants cite the case of *Fair v. Traction Co.*, 102 Kan. 611, 171 Pac. 649. In that case causal connection between ·the unlawful rate of speed and the collision was established by special findings of the jury. In this case such connection is expressly negatived by special findings of the jury.

Defendants Skidmore and Dunham say they are relieved from liability by the 13th finding. The petition charged that

the three occupants of the automobile were using it in an enterprise in which they were all interested. The general verdict included a finding to that effect. The court instructed the jury that the 13th finding referred to physical mechanical control. The defendants acquiesced in the instruction. Only one person could drive, and whoever drove did so for the benefit of the others.

The judgment of the district court is reversed, and the cause is remanded with direction to enter judgment on the verdict.