**Preston A. PARKINSON, Appellant,**

v.

**The CALIFORNIA COMPANY, a Corporation, and Stanolind Oil & Gas Company, a Corporation, Appellees.**

**No. 5677.**

United States Court of Appeals
Tenth Circuit.

April 8, 1958.

George L. Barnard, of Albaugh, Bloem, Barnard & Smith, Idaho Falls, Idaho (E. N. Moody, Jackson, Wyo., was with him on the brief), for appellant.

John P. Akolt, Denver, Colo. (John P. Akolt, Jr., Robert A. Dick, Denver, Colo., and Wilfrid O'Leary, Cheyenne, Wyo., were with him on the brief), for appellee California Co.

Albert E. Nelson, Rock Springs, Wyo., (A. G. McClintock, Cheyenne, Wyo., was with him on the brief), for appellee Stanolind Oil & Gas Co.

Before BRATTON, Chief Judge, PICKETT, Circuit Judge, and RICE, District Judge.

PICKETT, Circuit Judge.

The plaintiffs, as owners of a cafe and bar in the town of Jackson, Wyoming, brought this action against defendants as the manufacturers of liquid propane gas, for personal injuries and property damages caused by an explosion. The complaint alleged that the defendants'[1] failure to properly odorize certain liquid propane gas at the time of sale and delivery to a purchaser, who in turn sold it to plaintiffs, was negligence and the proximate cause of the explosion. The trial court sustained a motion to dismiss, and judgment was entered for the defendants. Applying the rule that a manufacturer of an article which is inherently dangerous to human safety is liable for injuries to persons beyond the immediate purchaser for foreseeable consequences of negligence, this court held the allegation that defendants failed to odorize the liquid gas was "sufficient to carry the plaintiff past a motion to dismiss." Parkinson v. California Co., 10 Cir., 233 F.2d 432, 437. Upon remand the case was tried to the court without a jury, resulting in judgment for the defendants. This appeal is from that judgment.

There is no substantial dispute as to the material facts. In 1948 the California Company entered into a contract with Stanolind, and other producers of oil and gas in the Rangely Field, Rio Blanco County, Colorado, for the construction and operation of a gasoline plant. Under the terms of this agreement, the producers were permitted to take in kind their proportionate shares of liquid petroleum gas. McHade L. P. Gas Company, a Wyoming corporation, purchased Stanolind's share of this product, not exceeding 125,000 gallons per month. McHade, a transportation company, delivered the liquid gas to Teton Gas and Appliance Company,[2] also a Wyoming corporation. Teton retailed liquid gas and sold and installed facilities for use of the gas, within its trade territory, which included Jackson, Wyoming.[3] The two companies were headquartered togethered in Rock Springs, Wyoming. They were owned and operated by the same individuals, with the same officers. Barney DeCora, who had considerable experience in the liquid gas business, was President of McHade, Secretary-Treasurer of Teton, and General Manager of both, as well as General Manager of several other corporations owned by the same individuals and engaged in retail distribution of propane gas. He subscribed to trade magazines and read literature concerning his business. He was familiar with the dangers in using the product.

During the years 1952 and 1953 the plaintiff was engaged in remodeling portions of his cafe and bar. Included in this project was the installation of a restaurant type kitchen range, a water heater in the basement of the building, and the necessary equipment for the use of propane gas as fuel. This equipment was purchased from, and installed by Teton. It included a new one thousand gallon liquid gas tank owned by Teton and leased to the plaintiff. Into this tank Teton placed three hundred gallons of liquid propane gas which had been purchased from Stanolind through McHade, and connected it to the appliances. Shortly thereafter the water heater failed to function properly and an employee of Teton came to the premises to determine the cause. Upon entry into

---

1. The defendants will be referred to herein as "California Company" and "Stanolind".

2. McHade L.P. Gas Company, and Teton Gas and Appliance Company, will be referred to herein as "McHade" and "Teton".

3. Propane is a petroleum gas, compressed to a liquid, and usually handled in metal containers under high pressure. It is highly volatile, and when released into the atmosphere, vaporizes instantly, and in certain quantities forms a highly explosive mixture, heavier than air. It is odorless and colorless, and its presence cannot be detected unless there has been added to the liquid propane an adequate odorizing agent which will give a distinctive stench noticeable to persons with an ordinary sense of smell.

the basement of the building, there being no odor of escaping gas, the employee lit a match for the purpose of checking the water heater. An explosion followed immediately, causing the injuries of which plaintiff complains. The court found that Teton was negligent in the installation of the system, which permitted gas to escape, and committed other acts of negligence which caused the explosion. It is conceded here that these findings are supported by substantial evidence.

■ The liquid propane gas produced by Stanolind was odorless unless an odorizing ingredient were added. The purpose of an odorant is to provide a stench which will give warning of a dangerous condition to those who may come into contact with escaping gas. When McHade accepted delivery of the product in its trucks at the Colorado refinery, delivery tickets were prepared and signed by Stanolind's loader and McHade's truck driver. These tickets showed the amount of liquid propane gas placed in the truck tanks and the quantity and kind of odorant which had been added to it. The court found that the propane in question had been adequately odorized with a proper odorant when delivered to McHade. Clearly this finding is sustained by the evidence, and there was no evidence of lack of odor at any time prior to the delivery of the gas into the tank on plaintiff's premises. The import of this finding is that the defendants were not negligent in marketing a product which was inherently dangerous to human safety.

■ This finding would ordinarily dispose of the case upon the question presented on the former appeal. However, there has been injected into the case another issue which arose from defendants' evidence and was considered by the trial court. The evidence discloses that when liquid propane gas is placed in new steel tanks or conducted through new steel pipes, a chemical reaction will take place which destroys the type of odorant (isopropyl mercaptan) used by Stanolind. The trial court found that the odor of the gas in question was destroyed by a chemical reaction in the new tank, combined with the presence of a substance known as methanol, negligently left in the tank by Teton after purging the tank,[4] and that when the gas escaped into plaintiff's building, it was odorless. The plaintiff contends that in addition to the duty to properly odorize the propane gas, the law imposes a duty upon the defendants to warn McHade upon the delivery of the product that the odor would be destroyed if placed in new steel containers. The essence of plaintiff's contention is that the defendants owed a duty to warn their purchasers of the peculiar characteristics of the product, and how certain methods of handling it, which they might foresee, would make it inherently dangerous, and that this duty was continuous and a failure to fulfill that duty was a proximate cause of the explosion. Relying upon evidence that McHade and Teton knew of the dangerous character of liquid propane gas, that for many years they had operated an extensive business of retailing it and installing hundreds of new facilities for its use,[5] and that information concerning the chemical reaction which would

4. "Purging a tank" is a process employed to eliminate moisture and other matters which adversely affect the liquid gas placed in the tank.

5. The testimony of Barney DeCora concerning the number of new installations, was as follows:
"Q. And what would you have to say as to the amount of expansion in the line of new installations and things of that nature that you handle? A. Well, I would say since 1946 we have made at least 14 or 1500 new installations.

"Q. And through your Teton Gas & Appliance Company, how many new installations have you made? A. I would say about a third of that, about 500.
* * *
"Q. And to make a new installation, do you always use a new tank and new pipelines? A. Not always new tanks because a lot of times the tanks have been returned from another customer, but we always use new lines.

"Q. Have you had occasion to purchase any considerable number of new

take place in new steel tanks destroying the odor was contained in many of the trade publications which were read by or were available to the purchasers, the trial court found that the purchasers knew, or by the exercise of reasonable diligence should have known, that such chemical reaction was likely to occur. In addition Teton knew that it was necessary to purge the new tank before putting liquid propane into it for commercial use. In performing this purging process, it used ten pints of methanol. An expert testified that the method used would leave methanol in the tank which would tend to destroy the odor in the propane. We think this evidence is sufficient to sustain an inference that Teton knew that new steel equipment would destroy the artificial odor in the propane.

 McHade and Teton were very substantial dealers in the product, as well as installers of new steel facilities. They had a duty to use a degree of care in proportion to the dangers involved. As distributors of propane gas, and in selling and installing new equipment in which it was used, they were required to exercise a high degree of care to prevent injury from escaping gas. This included a requirement that they and their employees should acquaint themselves with knowledge of the properties of the gas and the proper methods of handling it.[6] Gas Service Co. v. Helmers, 8 Cir., 179 F.2d 101; Mattson v. Central Electric & Gas Co., 8 Cir., 174 F.2d 215, certiorari denied 338 U.S. 868, 70 S.Ct. 142, 94 L. Ed. 532, rehearing denied 338 U.S. 896, 70 S.Ct. 238, 94 L.Ed. 551; Skelly Oil Co. v. Holloway, 8 Cir., 171 F.2d 670; Clay v. Butane Gas Corp., 151 Neb. 876, 39 N.W.2d 813; Winkler v. Macon Gas Co., 361 Mo. 1017, 238 S.W.2d 386; Doxstater v. Northwest Cities Gas Co., 65 Idaho 814, 154 P.2d 498. See, also, Miller v. New York Oil Co., 34 Wyo. 272, 243 P. 118. The propane was delivered to McHade, not in containers, but in bulk. It was taken from the refinery and placed in storage tanks belonging to the member corporations. When it was sold, there was no method by which defendants could warn the plaintiff how it should be handled. The gas not being sold in original containers, and as it was not known to whom Teton might sell the same, defendants could only warn the purchaser McHade. McHade and Teton knew of the possible chemical reaction. Warning is required to impart knowledge, and if that knowledge has already been acquired, it is not necessary. 46 Am.Jur., Sales, §§ 804, 816; 65 C.J.S Negligence § 100; 164 A.L.R. 371.

 We are satisfied that the peculiar facts of this case do not bring it within the rule that a manufacturer is liable to an ultimate consumer for damages in failing to give adequate warning of the dangerous character of its product. But, if we were to assume that there was such a duty to warn, the finding of the trial court established that the failure to warn was not the proximate but only a remote cause of the injuries. The court

tanks for the Teton Gas & Appliance Company? A. Yes.

"Q. Could you give us any idea of how many new tanks? A. New tanks, I would say between three and four hundred."

6. The trial court stated:

"* * * that if there was any duty to add additional malodorant because of the use in new facilities and new pipes, that that duty was on the Teton Company and not on Stanolind. So far as the Court is concerned the fact that this gas lost its odor because of the chemical reaction occurring in the tank was not a foreseeable consequence so far as the Stanolind Company was concerned, and the fact that the odor fade did occur cannot be attributed to any act of Stanolind. Also, Stanolind was dealing with people here who were in this business who were installing the equipment and installing the lines. * * * They put in an odorant which could cause and enable the presence of gas to be detected, and when that odor is lost through activities of persons to whom Stanolind supplies it, the Court thinks that that fact cannot be attributed to Stanolind and that there is no continuing act or failure on the part of Stanolind that was a contributing cause of this unfortunate explosion."

stated: " * * * that the proximate cause of the explosion referred to in the Amended Complaint was negligence on the part of Teton Gas and Appliance Company. * * * " The law does not fix liability upon a wrongdoer for all the possible consequences of a wrongful act. Even in cases where dangerous instrumentalities are concerned, responsibility must end somewhere. There is liability only when the wrongful act is a proximate and not a remote cause. Lemos v. Madden, 28 Wyo. 1, 200 P. 791.[7] The most that can be said, if a failure to warn is assumed in this case, is that the failure created a condition or an occasion for the explosion, and that there was a mere possibility that the injuries might not have occurred except for Stanolind's nonfeasance.

The controlling substantive law is that of Wyoming. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. In Lemos v. Madden, supra, 200 P. at page 794, the Supreme Court of Wyoming, in a very comprehensive study of remote and proximate cause, said:

> " * * * Of course, if an injury would have happened in any event as a result of the act or omission, no matter what might have intervened, responsibility follows. But if the original wrong furnished only the condition or occasion, then it is the remote and not the proximate cause, notwithstanding the fact that there would have been no loss or injury but for such condition or occasion. * * * There must be a causal connection, and that must be from proximate cause, as that has been defined by the courts, and not from remote cause, to injury. * * * A cause may, in law, be considered a remote cause, notwithstanding the fact that no injury would have occurred, if it had not happened."

See, also, O'Mally v. Eagen, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582; Equitable Life Assur. Soc. of United States v. Gratiot, 45 Wyo. 1, 14 P.2d 438, 82 A.L.R. 1397; Carney Coal Co. v. Benedict, 21 Wyo. 163, 129 P. 1024.

There is no evidence in this case tending to establish that the plaintiff's injuries would have occurred in the absence of an intervening cause, or that they would not have happened had the warning been given. It is clear that there would not have been an explosion except for the negligence on the part of Teton in installing the equipment, thereby permitting the gas to escape. Except through rank speculation, it could not be said that there was a causal connection, which could be considered a proximate cause, between the failure to give warning to McHade, and the explosion. Generally it has been held that when an injury is brought about by the concurrent negligence of two persons, and when there would have been no injury in the absence of the negligence of either, each act of negligence may be considered a proximate cause, and both persons are answerable. Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580; Phelps v. Woodward Const. Co., 66 Wyo. 33, 204 P.2d 179. Assuming that Stanolind owed a duty to warn McHade, we cannot say as a matter of law, under the peculiar facts of this case, that there was a causal connection between this failure and the explosion, or that it was the proximate cause thereof. This ordinarily is a question for the jury or the trial court. Phelps v. Woodward Const. Co., supra; O'Mally v. Eagan, supra; Dallason v. Buckmeier, 74 Wyo. 125, 284 P.2d 386. In Hernandez v. Southern Union Gas Co., 209 F.2d 606, 610, we said: "Proximate cause is an ultimate fact and is usually an inference to be drawn by the fact finder from the proven facts". It is apparent that in this

7. In Lemos v. Madden, 200 P. 791, 793, "proximate cause" was defined as that "which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred. * * * Proximate cause is probable cause, and remote cause is improbable cause."

case, the effect of the trial court's finding is that the negligent acts of Teton were the sole proximate cause of the accident, and we cannot say that this finding is clearly erroneous.

Affirmed.