HORSLEY v. ROBINSON et al.

No. 6940.   Decided November 6, 1947.   (186 P. 2d 592.)

See 13 C. J. S., Carriers, sec. 749. Liability for damage or injury by skidding motor vehicle, see note, 58 A. L. R. 264. See, also, 5 Am. Jur. 654.

*Moyle, Mckay, Burton & White* and *R. A. Burns,* all of Salt Lake City, for appellants.

*Hanson & Hanson,* for defendant.

*Judd, Ray, Quinney & Nebeker,* all of Salt Lake City, for respondent.

WADE, Justice.

The defendant, Utah Transportation Company, appeals from a $5,175 verdict in favor of plaintiff Erma Horsley for damages suffered in an accident while riding as a passenger for hire in a bus operated by the transportation company between Hill Field and Salt Lake City. The same jury returned a verdict of no cause for action in favor of the defendant Reinhardt.

There was an aisle down the center of the bus with seven double seats on each side and one long seat for five persons across the rear end, thus seating 33 persons besides the driver. In the accident plaintiff was thrown forward causing her throat to strike against the back of the seat in front of her and thereby causing injuries which affected her voice.

The accident occurred about 5:25 p. m. on January 23, 1944, in Davis County a short distance north of the Salt Lake-Davis County Line on highway 91, the main highway between Ogden and Salt Lake City. The paved portion thereof consists of four 10 foot traffic lanes with a 13 foot shoulder on each side. At the time of the accident the shoulders were lined with snow banks which substantially reduced their width; the highway was covered with ice, and slush and a sleet of snow and rain was falling, thus rendering driving conditions very hazardous. While the bus was proceeding southward at a speed between 20 and 50 miles per hour in the outside west traffic lane on the driver's extreme right-hand side of the highway in the proximity of a long and very gradual curve and on a slightly down hill slope, the defendant Reinhardt was approaching driving his car from the opposite direction at from 20 to 30 miles per hour in the east traffic lane next to the center of the highway, when suddenly Reinhardt's car went out of control and swung around so that it was facing to the

south in the outside west traffic lane and directly in the course of the oncoming bus. While the car was moving slowly toward the south the left front side of the bus ran into the rear right side of the car thereby shoving it down the highway a distance of from 30 to 50 feet where it was stopped by colliding with another car on the highway. By the impact with the Reinhardt car the bus was turned slightly to the west where it ran into another automobile which was parked on the west shoulder which deflected its course toward the east and it finally came to a stop in the snow bank on the east side of the highway about 75 feet from the parked car.

The terms "between distance" and "distance between" used throughout this opinion to indicate the distance between the bus and the Reinhardt car when it first became discernible that the latter was out of control, and the term "due care speed" used to indicate a reasonable speed in view of the surrounding circumstances, were suggested by Mr. Justice Wolfe. The word "control" is used herein in its ordinary sense to mean the ability of the driver to stop or reduce the speed of his vehicle within a reasonable distance and to guide the same in the desired course.

From the evidence it is clear that when the Reinhardt car commenced to turn it was within full view of the driver of the bus but that he did not slacken his speed prior to the collision nor apply his brakes until within 5 or 10 feet of the Reinhardt car. From these facts one of three things or a combination thereof must have caused the accident: (1) the Reinhardt car went out of control and into the course of the bus when it was so near thereto that there was no time for the bus driver to do anything to avoid the accident; (2) the driver of the bus, although he had sufficient time and had the bus under sufficient control to avoid the accident failed to see that the Reinhardt car was turning into his course in time to avoid the accident, or seeing it in time failed to exercise the necessary control to avoid the accident; or (3) the bus driver, although he had sufficient time after the Reinhardt car commenced to turn into his course to

avoid the accident had he had the bus under control, did not have the bus under sufficient control to avoid the accident.

If the Reinhardt car went out of control and into the course of the bus when it was so near thereto that the driver did not have time to avoid the accident then defendants were not negligent and plaintiff cannot recover. *Cederloff* v. *Whited,* 110 Utah 45, 169 P. 2d 777; *Hart* v. *Kerr,* 110 Utah 479, 175 P. 2d 475. If the second proposition above stated was the cause of the accident then clearly the defendants were negligent and such negligence proximately caused the accident because clearly the driver owes a duty to keep a proper lookout and see substantial objects on the road in front of him and to take the necessary steps to avoid colliding therewith and if he failed to do so he is liable for the damages resulting therefrom. However, I am not sure that the evidence would justify the jury in finding that such was the cause of the accident. If the accident was caused by the third set of facts above set out then the jury could from the evidence find facts sufficient to sustain a finding that the driver negligently operated the bus at such a speed that he was unable to maintain sufficient control thereof to avoid the accident. So it is necessary to analyze the evidence and determine what facts the jury could reasonably find therefrom.

The controlling facts for the jury to determine are: (1) At what rate of speed was the bus travelling at the time of the accident? (2) How far was the between distance? (3) Did the driver have sufficient control over the bus to stop it within the between distance? And from those facts the jury would have to determine whether the defendants were guilty of negligence which proximately caused the accident and injuries. The jury had before it evidence that the bus was traveling as slow as 20 and as fast as 50 miles per hour.

From all the evidence how fast could the jury reasonably find the bus was traveling? The testimony adduced by the defendants fixed its speed at from as slow as 20 to slightly faster than 25 miles per hour, and plaintiff fixed it at 50 miles per hour. The fact that the bus struck the Reinhardt

car and shoved it from 30 to 50 feet where it was stopped when it hit a parked car, and the fact that after striking the Reinhardt car the bus swerved to the right into another parked car and was deflected to the left across the highway where it was stopped by a snow bank about 75 feet from the parked car indicates that it was traveling with considerable speed. The evidence would sustain a finding by the jury that the bus was traveling as fast as 40 miles per hour.

What is the maximum which the jury, from the evidence, could find the between distance was? Plaintiff testified that that distance was a Salt Lake City block (660 feet), Reinhardt estimated it at less than 300 feet and the bus driver esimated it at 75 to 100 feet. These were all interested witnesses but six passengers on the bus at the time of the accident were called by the defendants who testified at various distances ranging from 30 feet to 330 feet. All of them except one fixed it at 150 feet or less. The sixth witness was a Mrs. Sessions who when on direct examination by defendants' counsel without leading was asked what that distance was answered twice that it was about a half a Salt Lake City block (330 feet). Later defendants' counsel led her into estimating that distance at about the width of a Salt Lake City street (100 feet). Apparently she did not recognize that this testimony was in conflict with her previous statement. From the position the Reinhardt car was struck and the testimony of all the witnesses it had turned completely in the opposite direction and was traveling slowly toward the south, the same direction that the bus was going. This would require some time. From all of the evidence we conclude that the jury could have reasonably found that the between distance was as far as 330 feet.

It is argued that since there is no evidence of the distance required to stop the bus under the then existing conditions at any given rate of speed the evidence is not sufficient from which the jury could find the defendants guilty of negligence which proximately caused the accident. If plaintiff must, in order to make a case, show that the driver could have

stopped the bus within the between distance then her evidence is clearly insufficient to justify a finding in her favor, because the evidence does not justify such a finding.

On the contrary the evidence points definitely to the fact that the driver did not have the bus under sufficient control so that he could either bring it to a stop, reduce its speed, or steer it to one side sufficiently to avoid the accident within the in between distance. And this is true even though that distance was as far as 330 feet.

The following facts quite definitely point to that conclusion: The icy highway covered with snow and slush with a sleet of snow and rain falling; the fact that the Reinhardt car went completely out of control while traveling from 20 to 30 miles per hour; one witness testified that as he approached the scene of the accident from the north he slowed his car down and put it in intermediate gear in order to insure that he could sufficiently control it so that he could safely stop and pick up passengers; the rate of speed at which the bus was traveling which the jury could reasonably find to be as fast as 40 miles per hour; the slightly down hill slope of the highway; the fact that the driver, according to his own testimony saw the Reinhardt car when it commenced to turn and that thereafter, as the jury could reasonably find, he traveled as far as 330 feet without applying his brakes until within 5 or 10 feet of that car and without appreciably decreasing his speed prior to the impact therewith, point almost conclusively to the fact that the driver did not have the bus under sufficient control to bring it to a stop or to turn it to one side sufficiently to avoid the collision. The jury would be amply justified in so finding.

Here the jury was not only required to return a general verdict and we do not know how the jury determined the controlling questions of fact. Had the jury been required to answer special interrogatories covering these questions, and had they answered them in the manner we have above indicated they reasonably could find from the evidence, no one would contend that the evidence was not sufficient to sustain such a finding. Since the trial court is not required

to submit special interrogatories and therefore we do not know how the jury in fact did determine the controlling issues we must presume that they found the facts necessary to support their verdict if the evidence was sufficient to sustain such a finding. Thus we must view the evidence in its most favorable aspect to support the verdict which the jury has rendered and if from the evidence the jury could reasonably find facts necessary to sustain their verdict it must be sustained. This is true, even though had we been the triers of the facts we would have found them differently, or even though we may not believe that the jury did in fact so find or, even though we believe that such a finding would be against the great preponderance of the evidence.

Under a general verdict we cannot be assured what facts the jury found or that they found the facts necessary to sustain their verdict. So it is universally held under the common law system, as it must be in order to give stability to jury verdicts, that the appellate court ∎ must sustain the verdict where the evidence is sufficient to support a finding of the necessary facts to do so. Otherwise, the appellate court would be required to reverse every verdict where in its opinion the great preponderance of the evidence is against a finding of the necessary facts to support it, even though the evidence is such that reasonable minds might conclude from the evidence that such necessary facts happened. To do so would be to review the evidence no matter what we call it. The question of what were the facts and where is the preponderance of the evidence is for the jury and not for the court to determine. Our problem is only to determine whether there is sufficient evidence to sustain the verdict. In doing so our standard is: Could a reasonable mind be convinced by the evidence of the necessary facts to support the verdict? If so, it must be sustained.

That this court is not authorized to review the facts found by the jury is expressly provided by our Constitution, Article 8, Section 9, where it is provided "In cases at law the appeal

shall be on questions of law alone." Since we cannot review the facts, whatever we think of where the preponderance of the evidence is, is immaterial. If we were to review the evidence and reverse this case because we think the preponderance of the evidence on a material issue is against the plaintiff, we do so in violation of that constitutional provision. We cannot avoid violation of this constitutional provision by holding that since we have no assurance that the jury did find that the between distance was 330 feet, we may assume that they found it to be much less and reverse the judgment on that ground; because this requires us first to find that the preponderance of the evidence is against the plaintiff on this question, and thus requires us to review the evidence for that purpose, which the Constitution forbids us to do.

If the jury found the between distance was as far as 330 feet, that the bus was traveling as fast as 40 miles per hour and that the driver did not have sufficient control thereof so that he could stop or turn sufficiently to one side so that he could avoid the accident within that distance, then under the existing circumstances the jury could reasonably find that he was guilty of negligence which proximately caused the accident.

The contention that the defendants were not negligent if the bus could not be stopped within the between distance is based on the assumption that the rate of speed at which the bus was traveling was reasonable regardless of whether the driver was able to control it under the existing conditions when traveling at such rate, and that the question of how much control the driver could maintain over the bus at such rate of speed is immaterial in determining whether such rate of speed is reasonable under the existing road conditions. What is a reasonable rate of speed under existing conditions must always be determined very largely on how much control the driver can maintain while driving at such rate.

The driver of a vehicle carrying passengers for hire, owes them a duty to operate his vehicle within such rate of speed

as a reasonably prudent person would operate under the existing conditions. Under those conditions an increase in speed would proportionately decrease the control of the operator over his vehicle, and increase the danger to his passengers. Reasonable prudence requires that the driver shall not foreseeably expose his passengers to danger of serious bodily harm. If the operator drove the bus at such a fast rate of speed that he should realize that he could not have sufficient control thereof to avoid serious danger to his passengers under the existing road and weather conditions then he was negligent regardless of how slowly he must operate his vehicle in order to assure reasonable safety to his passengers.

Where the road and weather conditions make driving hazardous, reasonable prudence requires a proportionate increase in the care of the driver to avoid injury to his passengers. No rate of speed can be fixed which will be reasonable under all conditions and circumstances. On a clear dry road burdened with little traffic a person could with reasonable prudence operate a vehicle much faster than he could when traveling over a highway covered with slick ice on top of which was slush while a sleet of snow and rain was falling, and where the highway was burdened with heavy traffic. The duty of the operator is to drive his vehicle at such a rate of speed that he can sufficiently control the same so that he does not foreseeably jeopardize the safety of his passengers. He is under this duty regardless of the size and weight of his vehicle and the road and weather conditions. Where the road and weather conditions are bad he must, in order to avoid being negligent, reduce his speed to a rate at which he can operate it with reasonable safety.

Here we are only concerned with the defendants' duty to their passengers not with their duty to the public generally nor with their last clear chance duty to Reinhardt. The rules above stated apply to the public generally and especially to a passenger for hire, since a carrier owes to its passengers for hire a duty to exercise greater care for

their safety than it owes to the public generally. *Paul* v. *Salt Lake City Ry. Co.*, 30 Utah 41, 83 P. 563.

The mere happening of the accident of course does not prove that the defendants were negligent. Nor does the fact that the rate of speed at which they traveled brought them at the scene of the accident at the time that the Reinhardt car went out of control and into the course of travel of the bus, because that is something that they could not anticipate and guard against. That seems to be the point which is cleared up by the cases of *Whalen* v. *Dunbar*, 44 R. I. 136, 115 A. 718; and *O'Malley* v. *Eagan*, 43 Wyo. 233, 2 P. 2d 1063, 77 A. L. R. 582. But negligence may be inferred from facts and circumstances which according to human experience tend to show and from which reasonable minds might be convinced that in operating the bus as they did under the surrounding facts and circumstances the defendants should have anticipated that they were endangering the safety of their passengers.

It is argued that on an icy highway it is impossible to drive so as to avoid the possibility of all collisions, that the road and weather conditions might be such that even at 5 miles per hour a bus of the size and weight of this one might slide 100 feet or more regardless of anything the driver could do about it. Of course, if this bus had been traveling at the rate of 5 miles per hour the collision with the Reinhardt car would not have injured the plaintiff because at that rate the bus being driven against a small car moving in the same direction would not create sufficient jar to injure the passengers. On the other hand, if the conditions were such that the driver could anticipate that if he drove at the rate of 5 miles per hour he would not be able to stop his bus within 100 feet and that he would thereby seriously jeopardize the safety of his passengers then it would be negligence of him to proceed at such rate of speed. Suppose conditions were such that the driver could anticipate that if he moved at the rate of 5 miles per hour he would slide 100 feet before he could stop and that in so doing he would be apt to slide over the side of the highway

and his bus would overturn or slide onto a railroad track where he would be struck by an approaching train, would anyone contend that he could proceed even at that rate of speed without being guilty of negligence?

If the bus under normal road and weather conditions were operated on a highway burdened with heavy traffic, at such an excessive rate of speed that it could not be stopped or turned to one side sufficiently to avoid crashing into another car which came into its course of travel when ■ the bus was 330 feet away and continued slowly in the same direction the bus was traveling, the driver of the bus would clearly be guilty of negligence in driving too fast. The defendants would also be negligent if they operated the bus under normal conditions with such defective steering and braking equipment, on a highway burdened with heavy traffic, so that it could not be stopped or steered to one side sufficiently to avoid a collision with a vehicle which came into its course 330 feet away in the manner that the Reinhardt car did in this case. Here the driver had driven more than 20 miles under similar road and weather conditions which he encountered at the time of the accident. He had ample time to fully realize the amount of control or lack thereof which he could exert over the bus in case of an emergency. The driver must know that this highway would be burdened with much traffic, he as a reasonable prudent man must anticipate that vehicles would be constantly crossing and coming into his course of travel. Under such conditions he must anticipate that it would be highly dangerous for him to operate the bus at such a rate of speed that he could not stop or turn to one side sufficiently to avoid a collision with the Reinhardt car if it came into his course of travel 330 feet away. The evidence was sufficient from which the jury could find the defendants were negligent.

To this effect, the law is well established in this state: Section 57-7-113, U. C. A. 1943, provides:

"(a) No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard

to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle, or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

* * * * *

"(c) The driver of every vehicle shall, * * * drive at an appropriate reduced speed * * * when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions."

This statute requires that a driver shall not drive at a speed greater than is reasonable and prudent in view of the existing conditions and hazards on the highway, that his speed shall be controlled so as to avoid colliding with other vehicles entering or upon the highway in a lawful manner, and that the speed shall be appropriately reduced when special hazards exist with respect to other traffic or by reason of weather conditions. In other words, since the greater the speed the less control the driver has over his vehicle and a longer distance is required within which to stop, and his ability to guide his vehicle is decreased, and since his control will also be decreased when traveling on icy roads covered with slush when a sleet of snow and rain is falling, he must under such conditions according to this statute decrease his speed so that he can drive with reasonable safety to others using the highway and, according to our cases, he even owes greater care to his passengers.

In *Nikoleropoulos* v. *Ramsey,* 61 Utah 465, 214 P. 304, the defendant was driving his car at night during a heavy rain storm at about 12 miles per hour; in the distance the lights of oncoming cars reflected on the wet pavement into his eyes so that at the time of the accident he was unable to see the plaintiff walking on the pavement in front of him until he was within 6 feet and then it was too late to avoid running him down. We held that defendant was negligent as a matter of law, no matter how dark and stormy the night or how bad the visibility, if he drove at such a rate of speed that he was unable to avoid running plaintiff down within

the distance plaintiff could be seen walking ahead of defendant's car on the highway. To the same effect see: *Dalley* v. *Mid-Western Dairy Products Co.*, 80 Utah 331, 15 P. 2d 309; *Haarstrich* v. *Oregon Short Line R. Co.*, 70 Utah 552, 262 P. 100; *O'Brien* v. *Alston*, 61 Utah 368, 213 P. 791.

The *Nikoleropoulos* v. *Ramsey* case is in substance a holding that it is negligence to operate a vehicle on the highway at any time without having it under sufficient control so that others using the highway will not be unreasonably endangered thereby, regardless of how slow it is required to travel to accomplish that end. If that is the rule where visibility is involved, it follows that the same rule applies where the lack of control which endangers others is the result of slippery roads and stormy conditions. This would be especially true where a passenger for hire is involved. As above pointed out, if the lack of control which caused the danger to the passengers was the result of excessive speed, or defective steering apparatus and faulty brakes, then he would clearly be negligent. Under the above case the fact that the lack of control was the result of bad weather and road conditions, would not exonerate him from negligence.

Here the situation is slightly different than it was in the cases cited in that the Reinhardt car was out of control and moving from one side to the other in an uncertain manner. Under such circumstances a driver might try to pass to one side only to have the skidding car swerve into his path which he expected to be free. However, here as in the cases cited, the driver could be certain to avoid the collision by stopping the bus before it reached the skidding car. Since the car was traveling away from the bus had the bus been stopped, no collision could have occurred. There is also the difference that in the cases cited, the driver was traveling at nighttime, when the driver's ability to see objects on the highway was limited by darkness, and here there was no such limitation on the driver's ability to see. Since his ability to see was not so limited, his duty to keep his car

under control on that account was not so great. In view of these circumstances the driver was not, as a matter of law, guilty of negligence. But in view of the fact that the jury might have concluded that the car commenced to turn into the path of the bus when it was 330 feet away, and that the weather conditions were such that at the rate of speed the bus was traveling it could not be stopped, slowed down, or brought under control in time to avoid the accident, the jury could reasonably conclude from their own experience and practical judgment, of what an ordinary prudent person would do, that the driver was negligent in driving at such a rate of speed, and that such negligence was the proximate cause of the accident.

If the jury found that when the Reinhardt car commenced to turn into the path of the bus, it was as much as 330 feet away, it being clear from the evidence that the visibility was such and the highway was free from obstructions so that the driver could clearly see the car when it commenced to turn; that the slippery condition of the highway had been the same all the way from Hill Field to the place of the accident a distance of more than 20 miles, thus giving the driver ample opportunity to know how fast he could safely drive and still keep it under proper control; that the accident occurred on a main highway where the driver must anticipate heavy traffic conditions; and in view of the fact that the transportation company owed to its passengers a special degree of care for their safety, the jury might reasonably conclude that the driver was operating the bus at such a fast rate of speed that he could not control it sufficiently to avoid the accident. If the jury so found they could reasonably conclude therefrom that he was guilty of negligence which proximately caused the accident and plaintiff's injury.

This is a finding of negligence from the surrounding facts and circumstances and not merely from the happening of the accident alone. It is universally recognized that negligence may be inferred from the happening of the accident and the surrounding facts and circumstances where the facts

are such as to reasonably justify such inference even though there is no direct testimony to establish the exact grounds for negligence which caused the accident. *Green* v. *Higbee*, 66 Utah 539, 244 P. 906; *Morrison* v. *Perry*, 104 Utah 151, 140 P. 2d 772, which is the last opinion in that case which supercedes the one cited in appellant's brief.

The defendants' negligence is based, not on the premise that the driver could have stopped within the between distance, but on the opposite premise that by reason of excessive speed under the existing conditions he could not stop within that distance, and has thereby foreseeably endangered his passengers. Evidence of the distance required to stop the bus at various rates of speed would be necessary only where it supplies proof of some essential element of negligence which would otherwise be lacking. Here the essential elements necessary to establish negligence on account of lack of a due care rate of speed requires a showing that the bus was being operated at such a fast rate of speed that the driver should have realized that it was out of control to such an extent as to endanger the safety of his passengers. Evidence of the distance required to stop the bus at various rates of speed would tend to show either that the driver did or that he did not have the ability to stop the bus within the in between distance. If it showed that the driver could stop the bus within the between distance then it would defeat a claim of negligence on this theory, but would conclusively establish negligence on the grounds that had he used due care he would have stopped the bus within that distance and thereby avoided the accident. If it showed that the driver could not stop the bus within that distance then it would establish one of the necessary elements of this type of negligence, but, as previously pointed out, that element was amply shown by the evidence which was introduced. No complaint is made that such fact was not sufficiently established. The complaint seems to be that such fact was established and that the defendants were thereby exonerated from negligence.

A comparison with other distances will help us to visualize how far 330 feet is. It is 110 yards, one-half of a Salt Lake City block, one-sixteenth of a mile, nearly four times the distance between the poles of an ordinary utility pole line. These distances are familiar to every one who has lived a long time in this state. It is a long and dangerous distance for a bus to travel on a highway burdened with traffic without the ability to stop or reduce its speed sufficiently to avoid a collision such as this.

The distance within which the bus could be stopped at a given rate of speed is an evidentiary fact and not an ultimate one. The value of evidence thereon would be that the ultimate facts which are controlling in this case might be inferred therefrom. That fact would have some bearing on the question of what was a due care rate of speed but it certainly is not controlling on that question.

Here, as above pointed out, there are three sets of facts which were very largely determinative of what was not a due care speed under the existing conditions. They are: (1) How far was the between distance? (2) How fast was the bus traveling? (3) Did the driver have sufficient control over the bus so that his speed was a due care speed? Both of the first two questions were answered by direct evidence, and the question of the distance required to stop the bus when traveling at various speeds would have no bearing on either of them. That evidence would only tend to show whether or not the bus was out of control. Here the evidence is ample to show that the bus was out of control, so that it could not be stopped or its speed reduced sufficiently to avoid the accident. Such evidence was not necessary in order for plaintiff to make a prima facie case, and this court is not authorized to require the plaintiff to produce it. Especially is this true where as here the missing evidence has no tendency to establish the disputed questions of fact in the case.

Although the smoother the road surface the greater the distance required to stop the bus at a given speed it does not follow that a driver can, without being negligent, drive

at such a rate of speed over a smooth road that the safety of his passengers will be thereby jeopardized. What is due care under the existing conditions is determined by the driver's duty to his passengers, and that duty is that he must not foreseeably jeopardize their safety; he has that duty whether driving over a smooth icy road or over a normal dry pavement. To this effect the statute and cases cited are positive. The evidence here was sufficient since the jury could reasonably find that the bus was traveling at 40 miles per hour, that the between distance was 330 feet, and that the bus was out of control so that it could not be stopped or its speed reduced sufficiently to avoid this accident within that distance.

It must be kept in mind that here our problem is whether the evidence is sufficient to sustain the verdict, not whether the evidence in question is admissible. Had defendants offered to prove the distance which would be required to stop the bus under the surrounding circumstances at a given rate of speed and such offer had been rejected we would have had a different problem. Since the evidence was sufficient to make a prima facie case for plaintiff it is sufficient to sustain a verdict in her favor and that is all we can require her to do. She is not required to produce evidence which will tend to defeat her claim. If there are other material facts which defendants wanted to prove they were at liberty to introduce evidence thereof but they certainly cannot defeat plaintiff's claim merely on the ground that she has failed to produce all the material evidence. This is especially true where as here the defendants are in a better position to supply the missing evidence than is plaintiff. They, no doubt, have as their employees many experienced drivers of buses similar to this one whom they could call to give evidence on the distance required to stop the bus under the then existing conditions and the driver who was then operating the bus at the time of this accident was in a better position to know these facts than any one else.

We have carefully considered the other assignments of error and find no merit to them. The judgment of the trial

court is affirmed with costs to the respondent.

McDONOUGH, C. J., concurs in the opinion of Mr. Justice WADE, as elucidated by the opinion of Mr. Justice WOLFE.

WOLFE, Justice (concurring).

I concur.

While there is much in the reasoning of the main opinion with which I am in accord, there are a number of statements with which I do not agree. Rather than enter into a critical analysis of those statements pointing out wherein I think they are incorrect, I believe a more constructive contribution can be made by an elucidation of some of the concepts applicable to speed cases and in pointing out the peculiar nature of the bus driver's responsibilities to his passengers in view of the situation which confronted him— that is, the sudden and unexpected sliding of the Reinhardt car athwart the right of way of the bus—as compared to the duty of the driver generally to drive at a due care speed when no emergency confronted him.

I shall preface the main part of my opinion by a brief consideration of the phrase "control of a car," or its equivalent "car under control," and its counterpart "out of control." I am convinced after some years in the practice and on the bench that these phrases are often used without sufficient thought as to their conceptional content in view of the facts of the particular situations claimed to involve negligence.

Ordinarily the word "control" applied to the operation of a moving mechanical object such as a car when used in the phrase "under control" as distinguished from "out of control," means that the operator has the power to make the car respond to his will which in the case of an automobile means that it will respond to his steering and to his action to accelerate or decelerate by manipulating the throttle or brake. "Out of control" usually means that the car can no longer be depended upon to respond to the driver's efforts

to guide or slow it. I go to some pains to describe these terms because I think that they are often used in a different and perhaps inexact sence. "Out of control" is the opposite of "under control" but excess speed is not the counterpart of "under control." Cars going at high speed may be under control in the sense that they are not out of control. We have an excellent example of a car "out of control" in the movements of the Reinhardt car. In many cases a pleader will use the phrase "failed to have proper control of the car" as meaning that the driver was going so fast as not to be able to slow down for eventualities although there was no inability of the driver to steer the car, apply brakes or decelerate the car. The only reason he could not do so in time to avoid an accident was that he was going too fast. Such allegation is synonymous with "excess speed" which in turn may be included in the still more inclusive phrase "driving without due care under the circumstances" or equivalent phrases. The pleader tends to multiply stigmata of delict in order to make defendant's conduct seem as reprehensible as possible. For the purpose of framing issues it is well to particularize as to the nature of the failure to exercise due care. In this case also we must fasten on what we mean when we use the phrases "under control" and "out of control."

In his opinion Mr. Justice Wade states definitely that he uses the word "control to

"mean the ability of the driver to stop or reduce the speed of his vehicle within a reasonable distance and to guide the same in the desired course."

I take this to be somewhat equivalent to what I shall call "due care speed," which I define as the speed which a driver should not exceed, in view of the likelihood of eventualities—not to avoid all collisions which no driver could do—but to enhance the possibility and probability of avoiding collisions. "Due care speed" is that speed at which a prudent and careful driver should drive in view of the prevailing weather and road conditions, and in view of the

condition and responsiveness of the braking apparatus on his machine and his duty to passengers, and to other traffic on the highway.

It should be said at the outset that I do not wish to be understood as saying that the jury must necessarily fix upon a speed that would be a maximum due care speed under a given set of circumstances. The speed at which a person was going might be considered as "too fast"—to use the popular vernacular—without the jury having to consult and agree or even have in mind a process or definite figure as being the upper limit of due care speed.

Therefore, in order not to confuse speed with "control" used in the sense of ability to manipulate the car, I shall use instead of the word "control," the phrase "due care speed" and shall use the term "excess speed," to mean speed in excess of due care speed. Speed seems, even under Mr. Justice Wade's interpretation of the word "control," to be the essence of "keeping control" or of "control" although at one place in his opinion he seems to confuse the meaning with "out of control."

In this case both sides introduced testimony as to the rate of speed at which the bus was travelling at the time the Reinhardt car went out of control and skidded into its path. Both sides also presented testimony as to the distance between the bus and the Reinhardt car at the time the Reinhardt car went out of control. This distance is hereinafter referred to as the "between distance." In addition to this, there was some evidence of circumstances surrounding the collision from which inferences of speed might have been made. Neither side offered evidence of the distances which would be required to stop the bus, travelling at various speeds, under the road and weather conditions prevailing at the time of the collision. I shall hereafter refer to such distances as "stopping distances." Appellant contends that the failure of plaintiff to introduce such evidence amounts to a failure of proof. Appellant's position is that without such evidence the jury could not determine what was a reasonable speed, and therefore could not say

whether or not the bus was travelling at an excessive speed. This question is fraught with considerable difficulty.

As background, and for better understanding of the problem involved, I believe it would be helpful first to consider the duty of the bus driver to Reinhardt. His duty in this respect would be purely one of last clear chance. Even if he were travelling too rapidly in view of the skidding hazards his speed would not have been the proximate cause of the accident. His duty would arise only when he perceived or should have perceived the Reinhardt car spinning toward his path and then it would have been his duty to avoid the collision if, and only if, under all the circumstances, taking into account the speed at which he was going, he had had ample opportunity to stop or slow up sufficiently to go around the Reinhardt car if there was room for doing that without endangering his passengers. A driver is not ordinarily required to anticipate that another will have gotten out of his proper path of travel and that he, the driver, must drive so as to create for some other a last clear chance opportunity. A driver of a car does not carry with him an anticipatory last clear chance obligation. Such obligation arises only after the operator of the vehicle is or should be aware of the position of the other, who, being in a position of danger, is unaware of his peril, or, if aware, unable timely to extricate himself from it. *Graham* v. *Johnson*, 109 Utah 346, 166 P. 2d 230; on rehearing, 109 Utah 365, 172 P. 2d 665. Nor would he be compelled to apply his brakes suddenly on an icy pavement if there were danger of his skidding off the road by so doing. The high care with which he was charged as operator of a public transport vehicle at the moment of discovery might require that he release the throttle and let the momentum of the car in part deplete itself before he applied the brakes. That might also have been the best thing to have done for the safety of his passengers even in this case. Or conditions may have been such that a due care speed would be one in which he had not gathered momentum and therefore could apply his brakes instantaneously. Due care speed may revolve around

the time it takes to run out momentum before brakes can be applied with safety. The difference between the case of the bus driver's duty toward Reinhardt and the passengers lies then in this: That as to Reinhardt, whose car suddenly spun in his path, the bus driver's speed cannot be the proximate cause of the accident (laying aside the case where the oncoming driver was going in excess of the legal speed, a case which I desire to reserve until it comes before us properly for consideration), but only failure to take advantage of the opportunity to avoid the collision if it reasonably presented itself, taking into account the bus driver's speed; whilst as to passengers the bus driver has the duty to drive with the care that a reasonably prudent person would have exercised under like circumstances and that means a due-care speed in view of slippery pavements and eventualities which may arise therefrom. As to passengers, if the driver exceeds a due-care speed he carries such negligence with him although it may or may not have proximately caused an accident. In many instances, negligence does not result in accidents. As to Reinhardt, the duty arose only after the bus driver did or could have seen Reinhardt's predicament. Reinhardt could not contend that had the bus driver been going slower there would have been more distance within which to stop, for by the same token, had the driver been going faster he might have passed the point where Reinhardt spun onto his pathway before the spin began. No person who gets himself into a dangerous position whether by negligence or without fault can contend that, had the on coming party been going slower, he would have had a greater last clear chance to stop. The last clear chance duty is one which arises out of the scene as the defendant finds it; it does not take into account antecedent conditions. If it did the plaintiff might argue that had the defendant been proceeding at a due-care speed, he would even have arrived at the scene of danger before he, the plaintiff, extricated himself from such danger and thus argue that in such wise the excessive speed was the proximate cause.

But as to a passenger in the bus the last clear chance doctrine is not applicable as a last clear chance concept. There would be the same obligation as in the last clear chance doctrine to do everything to avoid the accident consistent with safety toward his passengers but that would be in addition to the continuing duty to drive at a due care speed in view of possible eventualities and before they arose, and would therefore be a part of the bus driver's duty toward his passengers. The duty toward such passengers is to exercise continuous high care that they be not injured by the driving. And that means that the driver must drive as a prudent person would drive in view of his duty toward passengers, which I have designated for shortness "due care driving," or "due care speed." This means that the speed must be adapted to the hazards such as ice, snow, traffic and the like and, to an extent, to the likelihood of eventualities. Of course, no one can drive on an icy day so as to avoid all possible collisions. The Reinhardt car might have skidded directly in front of or over into the side of the bus no matter how slowly it was going, or even if it were stopped. Consequently, the collision itself does not prove excess speed. Such conclusion must come from the evidence or from inferences from other facts, although by taking into consideration such other facts the fact of the collision, or the force of it, may themselves be facts from which, in view of the total picture, inferences could be made.

When a car, through loss of control or other reason, suddenly and unexpectedly spins away from its side of the highway into the pathway of another vehicle coming from the opposite direction, we must be careful not to load onto the driver of the other vehicle, even as to a passenger, the duty to avoid the danger of the spinning car unless there is some negligence on the part of the driver of the vehicle remaining on its own right of way, which negligence proximately caused the injury to the passenger.

It is conceded that it is the duty of the appellate court to sustain a verdict where there is substantial evidence to

support it. I shall not enter into the matter of the appellate court's duty when the evidence is claimed to preponderate so plainly against the verdict as to show an abuse of discretion in the trial court in refusing to set the verdict aside as arrived at arbitrarily or through bias or prejudice or palpable failure to follow the court's instructions. I think it unnecessary to bring those matters into this case.

Returning now to the real problem of the case, I think it may be analyzed by breaking it into two parts. I shall first consider the sufficiency of the evidence of between distances to prove excess of due care speed. I shall then consider the direct testimony of speed, and whether or not it is sufficient to justify an inference of excess speed.

There must be some minimum between distance, which is so great that all reasonable minds would conclude that if a vehicle were proceeding along the highway at so great a speed that it could not be stopped within such distance, then such vehicle was travelling at an excess of due care speed. I shall call this distance x. Let us assume that the between distance is one mile. All reasonable minds would conclude that a bus that could not be stopped within one mile was being driven at an excess of due care speed. One mile is either x distance or x plus.

There must also be some maximum between distance so short that all reasonable minds must conclude that a vehicle travelling at a due care speed would not be able to stop within such distance. I shall call this distance y. Let us assume that the between distance is 10 feet. All reasonable minds would say that a bus travelling at maximum due care speed could not stop within such distance. Ten feet is either y distance or y minus.

Perhaps these concepts can be better explained by a simple illustration.

Let the line M N represent the highway. The bus is travelling from M toward N. From point A to point Y is y distance. From point A to point X is x distance. P represents any point between Y and X and p is the distance from A to P. Thus P represents every point between Y and X, and p represents every distance greater than y and less than x. When the bus arrives at point A, the Reinhardt car skids onto the west side of the highway into the path of the bus. If when the bus is at point A, the Reinhardt car is at point X or at any point beyond X, the bus, if travelling at a due care speed, can be stopped in time to avoid collision. If the bus cannot be stopped in time to avoid the collision, all reasonable minds will agree that it is travelling at excess of due care speed.

If when the bus is at point A, the Reinhardt car is at point P, reasonable minds may differ as to whether or not a bus travelling at due care speed would be able to stop in time to avoid the collision. In other words, reasonable minds may differ as to whether or not a bus travelling at a due care speed would be able to stop within distance p, or stated conversely, whether or not a bus unable to stop within the distance p was travelling at a due care speed. The closer P is to X, or the more closely p approximates x, the greater the number of reasonable minds which would conclude that a bus not able to stop within p was travelling at an excess speed; and conversely the nearer P is to Y, or the more closely that p approximates y, the fewer the reasonable minds that would conclude that because a bus was not able to stop within p it was travelling at an excess of due care speed.

If when the bus is at point A, the Reinhardt car is at point Y or any point between A and Y, if the bus is travelling at the maximum due care speed, all reasonable minds will agree that the bus could not stop in time to avoid the collision. A bus travelling at less than the maximum due care speed might be able to stop within y distance, and of course, it would be the duty of the driver to stop if possible. A failure to stop under such circumstances would make the

operator of the bus liable—not because he was negligent in travelling in excess of due care speed—but because he failed to utilize the last clear chance to avoid the collision.

With these concepts in mind, I think certain general rules can be laid down as regards the necessity of introducing evidence of the various distances required to stop a vehicle travelling at different rates of speed under the conditions prevailing at the time of the collision. These rules are intended to apply only where the plaintiff introduces no direct evidence of speed, but leaves speed to be inferred by the jury from the evidence of between distance alone.

(a) Where the evidence is conclusive that the between distance was x or greater than x, evidence of stopping distances would be immaterial. The defendant was travelling at an excess speed as a matter of law.

(b) Where the evidence is conclusive that the between distance was y or less than y, defendant is entitled to a directed verdict, since he would not be able to avert the accident even though travelling at a due care speed. From the between distance alone, no reasonable mind could infer excess of due care speed, and therefore there would be no evidence of excess speed to go to the jury.

(c) Where the evidence adduced by plaintiff tends to show that the between distance was x or greater, and the evidence adduced by defendant tends to show that the between distance was p, the burden is on defendant to show the stopping distances. The reason for this rule is: Plaintiff, having produced evidence that the between distance was x or greater has put in proof, which if uncontradicted, entitles him to a directed verdict (absent contributory negligence). Defendant, by adducing evidence that the between distance was p has not completely rebutted plaintiff's proof, since reasonable minds might conclude that even within distance p a bus travelling at due care speed could be stopped. In other words, in order to completely rebut plaintiff's evidence, defendant must not only show that the between distance was less than x (i. e., p), but also that a bus travelling at a due care speed could not be stopped within distance

p. This does not mean that if defendant fails to offer evidence of stopping distances that plaintiff is entitled to a directed verdict. What I do mean is that defendant assumes the risk of failure to produce such evidence, and if the jury finds for plaintiff, defendant cannot complain that the proof is insufficient. And, of course, where defendant offers · proof that the between distance was p, but fails to offer proof of the stopping distances, plaintiff may on rebuttal show the stopping distances to prove that a bus driven at a due care speed would be able to stop within distance p. In short, either party may offer evidence of the stopping distances, but neither may complain that the other failed to produce such proof.

(d) Where the evidence adduced by both parties is that the between distance was p, either party may introduce evidence of the stopping distances, but neither is bound to do so. Plaintiff may offer such evidence to show that a bus driven at a due care speed could be stopped within p, or defendant may offer such evidence to show that a bus driven at due care speed could not be stopped within distance p. However, in the event of an adverse verdict neither can complain that the other failed to offer the requisite proof.

(e) Where plaintiff's evidence shows that the between distance was p, and defendant's evidence shows that the between distance was y, the risk of failure to provide evidence of stopping distances is on plaintiff, but failure to furnish this evidence is not failure of proof, and plaintiff is entitled to go to the jury. And, of course, defendant may offer evidence of stopping distances as rebuttal to plaintiff's evidence. This is the converse of rule (c).

(f) Where plaintiff's evidence is that the between distance was x, or greater, and defendant's evidence is that the between distance was y, or less, either party may, but neither party must, produce evidence of the stopping distances.

Other situations may be conceived where some of plaintiff's witnesses put the between distance at x or greater, while others put it at p, and where some of defendants'

witnesses put the between distance at y or less, and others put it at p. Without segregating all of the possible combinations of evidence, I think it may be said that in these cases either party may offer evidence of the stopping distances, but neither is bound to do so.

Summarizing briefly, there is no situation in which the failure of either party to prove stopping distances will be so fatal to his case as to take it from the jury. Only where the evidence conclusively establishes the between distance as x or greater, or at y or less, will the case be taken from the jury. In all other situations there is sufficient evidence to go to the jury. Either party may offer evidence of stopping distances, either in support of his case in chief, or in rebuttal to the evidence of the adverse party. In most cases it will be advantageous for one side or the other to offer such evidence. But if both sides neglect to offer such evidence, neither can complain that the other failed to do so.

I think we may analyze speed in the same manner as we have analyzed between distance. Let r represent the minimum rate of speed which all reasonable minds will agree is in excess of due care speed under prevailing conditions. Let s represent the maximum rate of speed which all reasonable minds will agree is a due care speed under prevailing conditions. And let k represent all speeds between s and r. Reasonable minds would differ as to whether a bus travelling at k speed was at due care or excess speed. We may now parallel rules (a) to (f) announced above. Where the evidence is undisputed that the bus was travelling at r speed or greater, or at s speed or less, evidence of stopping distances would be of no value since excess of due care speed, or due care speed would be proved as a matter of law by direct evidence of speed. But where the evidence shows that the bus was travelling at k speed, or where there is a conflict in evidence as to whether the bus was travelling at r speed, k speed, or s speed, evidence of stopping distances may be introduced by either party, either in support of his case in chief or in rebuttal of the evidence produced by the other side. But neither party has the duty to offer such

evidence, and neither can complain, in the event of an adverse verdict, that the other party failed to prove his case.

As heretofore noted, in this case, as in most cases, there was evidence both of between distances and speed. The evidence of speed varied from 25 to 50 miles per hour. The evidence of between distance varied from 30 to 330 feet.

Most, if not all, of the between distances testified to would fall within the p distance range. Whether the extreme estimates would fall within the x or y distances is a question which I think we need not now determine. There was substantial evidence that the between distance was p, and from this the jury could infer that the bus was travelling at an excess speed. If a bus travelling at an extremely or moderately slow rate of speed could not be stopped within the between distances testified to, then defendants ought to have come forward with proof to that effect. Not having done so, they cannot now complain that there was not sufficient evidence of excess of due care speed.

As to the evidence of speed, I think that the jury might have concluded that even the minimum speed testified to —25 miles per hour—was an excess of due care speed, considering the weight of the bus and the stored energy such a heavy vehicle would have going at a speed of 25 miles an hour and the adverse road and weather conditions prevailing at the time of the collision. Here again, defendant cannot complain that plaintiff did not produce evidence of stopping distances. Defendant could have come forward with evidence that a bus travelling at 25 miles per hour could be stopped in a relatively short distance under the conditions then prevailing, if such were the fact. Having failed to do so, he cannot now complain that plaintiff has failed to prove his case.

I conclude that there was both direct evidence of speed and evidence of between distance from which a jury could infer that the bus was travelling at excess speed. In addition to this, there was the further evidence that after the bus struck the Reinhardt car it struck a ■ parked automobile and then careened across the road,

and finally came to rest at a point about 75 feet from the parked automobile. This was an additional circumstance from which a jury might infer that the bus was travelling at an excessive speed.

For the foregoing reasons, I concur.

PRATT, Justice (dissenting).

In dissenting I'm going to write the case as I view it in its details.

The pertinent facts are these: The plaintiff was a passenger for hire on a bus operated by the defendant, Utah Transportation Company. On the day of the accident plaintiff boarded the defendant's bus at Hill Field, Utah, her place of employment, for the purpose of being transported to Salt Lake City. She took a seat on the left side of the defendant's bus about three rows behind the driver. The bus left Hill Field at approximately 4:20 p. m. It was snowing and raining at the time and the highway along which the bus proceeded was covered with slush and ice. It was a four lane highway each lane being 10 feet wide, and it was paved. The road shoulders were about 13 feet wide, but cut down considerable by snow banks. The bus while proceeding south in the outside traffic lane on the west side of the highway about 1,800 feet north of the Salt Lake County line ran into the right rear of the defendant Reinhardt's automobile. Just prior to the collision defendant, Reinhardt, had been driving his automobile north about 20 or 30 miles per hour on the highway in the lane of traffic next to the center line on the east side of the highway. For some unexplained reason his car went into a spin and spun from the east side of the highway into the outside lane on the west side and directly into the path of the defendant, Utah Transportation Company's oncoming bus. Reinhardt's car was facing in a southeasterly direction and still moving at the moment of impact. It was knocked down the highway some 30 to 50 feet before it came to rest. After the first

impact with Reinhardt's car the bus ran into another automobile which was parked on the west shoulder of the highway before being brought to a full stop at a point about 75 feet from where it hit the parked automobile. The bus weight 7,000 pounds, had a 186 inch wheel base, and was 6 feet 10 inches wide. Its capacity was 33 persons.

It was in the first impact with the defendant Reinhardt's car that the plaintiff received her injury.

There is considerable variance in the evidence presented as to how far the company's bus was from Reinhardt's car when the latter was spinning toward the west side of the road and into the path of the bus; and also as to the speed of the bus at that time. The defendant Reinhardt, who was called as a witness for the plaintiff estimated the distance to be about 300 feet. The bus driver estimated the distance to be between 75 and 100 feet. Five passengers testified that they saw the Reinhardt car prior to the impact and their estimates ranged from 150 to 90 feet. One witness fixed the distance from the curve where the accident could first be seen as 200 feet. Mrs. Horsley the plaintiff, hesitatingly testified to a much greater distance, i. e. about 660 feet, one city block, but only after her counsel suggested she estimate by comparison with a city block. Her testimony on this points stands by itself.

Mrs. Horsley estimated that the bus was going 40 to 50 miles per hour. The bus had a maximum speed governor of 38 miles per hour which was locked at that speed. Several other passengers estimated the speed to be about 25 to 26 miles per hour approximately the speed the bus driver said he was driving immediately prior to the accident. It is undisputed that the bus driver did not apply the brakes on the bus until he was within 5 to 10 feet of the Reinhardt car. The bus did not slow up any appreciable amount from the time Reinhardt's car could have been seen until the collision. The bus was proceeding down a slight incline at the time of the accident. It had taken the bus about an hour and 10 minutes to travel approximately 22 miles.

The real controversy in this case is one of speed, and also as to whether or not the speed of the bus was the proximate cause of the injury to plaintiff. Failure to keep a proper lookout is unsupported by the evidence. The alleged failure to slacken speed and the alleged failure to apply the brakes are bound up in the question of speed and the question of proximate cause between speed and injury.

The question is: Did the evidence link speed and injury together by a chain of proximate cause? I believe not. Plaintiff has failed to establish the speed as a proximate cause of the collision. The case of *O'Mally* v. *Eagan,* 43 Wyo. 233, 2 P. 2d 1063, 77 A. L. R. 582, at page 588, discusses the necessity of proof of proximate cause very clearly. That court says in effect that one should be able to point out from the evidence just how the defendant could have avoided the accident by the use of proper care—proper speed in this case. If plaintiff can point that out in the evidence in the present case she has established a foundation for the jury's verdict. I cannot overemphasize the fact that the jury's verdict must have support in the evidence and such support is not found merely in the fact that the jury may have chosen to conclude that any one of the speeds testified to was unreasonable, simply because they believed it so, or by the fact that they chose to believe that such speed proximately caused the collision. There must be evidence to support their conclusions whatever those conclusions may be. We quote from *Whalen* v. *Dunbar,* 44 R. I. 136, 115 A. 718, at page 720, a quotation quoted and approved in *O'Mally* v. *Eagan,* (cited above) :

"If it should be conceded that the defendant's automobile at the time the emergency was created was proceeding at a rate of speed in excess of the statutory limit, there was no testimony of probative value showing or tending to show that the accident would not have happened if the defendant's automobile had been proceeding at the rate of 25 miles per hour, or even at a much less rate of speed, or that the speed of the defendant's automobile in any way entered into the cause of the collision."

To arrive at the verdict it did in the present case the jury must have found that the defendant bus company's driver could have stopped this bus upon the road as it then was within the space and time available to him after Reinhardt's car first became visible in its spin, had he been going at a reasonable rate of speed. But what was that reasonable speed; how was it to be determined so that it would show how the bus could have been stopped in time? There is no testimony as to the distance required to stop that bus at any given speed. Bus driving is not so common to all of us that each of us is qualified to express an opinion as to such a required distance. Three hundred feet distance or 75 feet distance on an inclined icy road at 50 miles per hour or at 25 miles per hour with a bus weighing 7,000 pounds and an automobile spinning toward the bus are not a set of facts which on their face indicates that the bus could or could not have been stopped in any particular distance—or, for that matter, that the collision could or could not have been avoided by the bus driver. Such circumstances leave nothing but speculation as to what could have been done with the bus at such speed or at other speeds. In the absence of evidence of the average human reaction time, the approximate coefficient of friction on the road under the conditions existing on the day of the accident, and the braking distances of vehicles, or in the absence of testimony of expert drivers as to what can be done with a motor vehicle of that size and weight, the jury cannot through the application of logic and reason determine whether or not a bus proceeding at a reasonable speed could have stopped in time to avoid a collision. Unless the jury can say from the evidence (not just say) that the collision would not have occurred, but for that speed, they are not justified in returning a verdict for plaintiff. The jury concluded that the transportation company's negligence was the only negligence that was the proximate cause of the collision. Even though it be considered that Reinhardt's skidding was an unavoidable accident so far as his responsibility is concerned, it does not follow that such a skiding may not have been an independent

intervening cause between the alleged negligence of the transportation company and the collision. To take it out of that classification there must be evidence connecting the alleged negligence of the transportation company as a proximate cause, to the collision.

To hand the jury various speeds and various distances and ask them to select which is reasonable and which is unreasonable without giving them an evidentiary standard upon which to base their selection, is to ask them to speculate. In the majority of cases, it will result in their reasoning backward from the resultant accident that the speed at which they conclude the driver was going must have been unreasonable or else the accident would not have happened. Such reasoning by its very nature assumes the proximate cause element; and the question of what was the proper method, under the circumstances, of operating the bus upon an icy road is just skipped over.

What is there in the record upon which a comparison can be made to enable the jurors to arrive at the conclusion of excess or of non-excess speed? I say again, bus driving is not a thing of common knowledge. It must be founded on expert testimony—of which there is none in the record. It can't be assumed that any speed is excessive, and the burden placed on defendant to defeat that assumption. The plaintiff's prima facie case calls for proof of negligence and proof of proximate cause, neither of which must be assumed. Proof of facts which cannot be measured, for lack of a unit to measure them, accomplish nothing.

I am of the opinion that the motion for a directed verdict in favor of the defendant Transportation Company should have been granted.

LATIMER, Justice, not participating.