368 P.2d 593

Jack E. LAKE, Plaintiff and Respondent, and Cross-Appellant,

v.

Robert J. PINDER, Defendant and Appellant,

Standard Gilsonite Company, a Utah corporation, and Robert M. Williamson, Defendants.

No. 9382.

Supreme Court of Utah.

Feb. 6, 1962.

Ollie McCulloch, Salt Lake City, for appellant.

McBroom & Hyde, Salt Lake City, for respondent.

WADE, Chief Justice.

Defendant Robert J. Pinder appeals from a judgment of $9,300 in favor of plaintiff and respondent Jack E. Lake for failure to deliver 31,000 shares of the capital stock of the Standard Gilsonite Company to plaintiff as agreed. Plaintiff Lake cross-appeals from this judgment, claiming that the proper measure of damages was the highest market value of the stock within a reasonable time after the failure to deliver, and not the price when the stock was sold.

Early in 1958, plaintiff Lake and defendant Pinder, president of the Standard Gilsonite Corporation, negotiated an agreement for an exchange of stock, whereby Lake was to trade 7,500 shares of his L. H. & L. Mining Company stock for 37,500 shares of Standard Gilsonite stock. Accordingly, in March of 1958, Lake delivered the 7,500 shares of L. H. & L. Mining Company stock to Pinder, who immediately delivered the stock to Standard Gilsonite without waiting for the issue of the 37,500 shares of Standard Gilsonite stock, which were to be exchanged. The Standard Gilsonite stock was to be escrowed with the Standard Gilsonite Company for a time and then sold for Lake's benefit. However, the certificates for these shares were not issued until January, 1959.

At the time this exchange was worked out between Pinder and Lake, there was talk between them of starting an equipment distributorship business in Texas to be known as the Life Massage Company. After several meetings between them, Pinder agreed either to finance or to lend money to the venture, and he initially advanced $2,500 to $2,700 to Lake. Lake used these funds primarily for his personal expenses connected with this business venture. To raise additional capital in April, 1958, Pinder sold, with Lake's consent, a total of 31,000 shares of Lake's Standard Gilsonite stock, the certificates for which were not then issued. The shares were sold in two blocks. The first block of 16,000 shares brought $4,000. Lake endorsed the check received from this stock over to Pinder, who gave Lake his personal check for $1,300. The second block of stock was sold for $5,000, which Lake deposited in a bank account for the Texas venture. Thereafter Pinder advanced no more funds and refused to replace any of Lake's stock he had sold. Whereupon Lake brought this suit against Pinder and Standard Gilsonite for damages resulting from their alleged failure to replace and deliver to Lake the 37,500 shares of Standard Gilsonite stock. The Standard Gilsonite Company settled Lake's suit against it by delivery to Lake of 6,500 shares of its stock, whereupon the suit against it was dismissed and the action proceeded against Pinder only.

The principal question presented is whether there is substantial evidence which furnishes a reasonable basis in support of the lower court's findings of fact when the

evidence is viewed most favorable to such finding. We conclude that the evidence does support the court's finding. If so, the judgment against Pinder must be affirmed.[1] In reviewing the evidence, we point out the evidence which generally tends to support the judgment.

Lake testified that Pinder promised to act as Lake's trustee for the receipt of the Standard Gilsonite stock in the exchange agreed upon, and that Pinder breached his trust when he immediately delivered the L. H. & L. Mining Company stock without waiting for the issuance of the Standard Gilsonite stock. He further testified that Pinder agreed to finance the Texas venture, promising to advance $12,000 to $15,000 for the initial capitalization and organizational expenses incurred by Lake. He testified that he allowed Pinder to sell his Standard Gilsonite stock with the understanding that Pinder would shortly replace it with his own stock, and that the proceeds from the sale of the stock were to be part of Pinder's contribution to the capitalization of the Texas Life Massage Company. Lake also testified that Pinder at first repeatedly promised to replace Lake's stock, but thereafter refused to do so, and that Pinder also refused to finish financing the Texas venture, and as a result, it failed.

Pinder denied that there was a trust relationship with respect to the exchange of stock. He also denied that he had agreed to supply the initial financing of the Texas venture. He claimed that the initial advances he made to Lake were short-term loans, and that Lake persuaded him to make such loans because he was in financial difficulty. He further claimed that he loaned Lake a total of $2,700 to tide him over a current financial crisis, with the intention that he would be repaid from the proceeds of the sale of Lake's stock. He denied that Lake had repeatedly demanded that Pinder replace Lake's stock.

There is a sharp conflict in the evidence on whether Pinder agreed to finance the Texas venture, borrowing Lake's stock to do so, or whether Pinder merely loaned Lake a sum of money which was repaid on the sale of Lake's stock. The court made a number of findings which are not necessary in order to support the judgment. Neither the proof of breach of trust, nor of conversion of the stock, was necessary to support plaintiff's case. Plaintiff pleaded and proved to the satisfaction of the trial court that Pinder had agreed to but had failed to replace and deliver Lake's stock. This proof was all that was necessary to support his recovery. So regardless of the unnecessary findings of fact, plaintiff was entitled to recover and the judgment to that effect is affirmed.

1. Horsley v. Robinson, 112 Utah 227, 186 P.2d 592.

We also conclude that the court did not err in assessing plaintiff Lake's damages at the value of the stock at the time of the sale and not at its highest market value within a reasonable time after the delivery should have been made. We are not concerned with the correctness of the rule claimed by plaintiff that in case of a conversion of fluctuating stock, the owner, who is deprived thereof, is entitled to be repaid the highest market value of such stock within a reasonable time thereafter.[2] But this rule is not applicable here where there was no conversion of plaintiff's stock, but a sale of plaintiff's stock with his consent. Here plaintiff and defendant entered into a joint venture, to finance which necessitated the sale of plaintiff's stock at the current market price to which sale plaintiff consented and agreed to. Later the defendant refused to live up to his agreement to replace plaintiff's stock. Under these circumstances the repayment of the market price of the stock at the time of the sale, which the court found was 30¢ per share, seems to be all that plaintiff in justice and equity is entitled to.

Judgment affirmed. No costs awarded.

HENRIOD, McDONOUGH, CALLISTER and CROCKETT, JJ., concur.

2. See Western Securities Co. v. Silver King Consol. Mining Co., 57 Utah 88, 192 P. 664; Nephi Processing Plant v. Talbott, 10 Cir., 247 F.2d 771.